**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CATHERINE MIRABILLO,**[1] | : | **No. 3:10cv1117(WWE)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **REGIONAL SCHOOL DISTRICT 16,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

In her complaint, plaintiff Catherine Mirabilio asserts that defendant Regional

School District 16 is liable for discrimination pursuant to the Americans with Disabilities

Act, 42 U.S.C. § 12102  et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794,

and the Connecticut Fair Employment Practices Act, Connecticut General Statutes

("Conn. Gen. Stat.") §  46a-60.

In count two of the complaint alleging ADA and Rehabilitation Act claims, plaintiff

states that "beginning on January 23, 2009, and continuing without interruption

thereafter, the defendant continually ordered the plaintiff to perform physical activities

outside of her aforesaid medical restrictions, harassed and bullied the plaintiff's

classroom assistant by ordering her not to assist the plaintiff in a variety of ways which

the defendants knew to be a necessary part of the required accommodation of the

plaintiff's physical disability, and imposed discipline upon the plaintiff for complaining

about the aforesaid harassment." The Court will construe plaintiff's complaint as stating

_____

[1]The complaint caption appears to have misspelled plaintiff's last name, which is
actually Mirabilio.

claims for failure to accommodate, disparate treatment, retaliation and hostile environment in violation of the disability statutes.

Defendant has filed a motion for summary judgment on the complaint in its entirety.  For the following reasons, the motion for summary judgment will be granted.

## I.  BACKGROUND

The parties have submitted statements of facts, exhibits and affidavits, which reveal the following relevant undisputed facts.

Plaintiff is a tenured culinary arts teacher in skilled trades and family and consumer science employed by defendant at Woodland Regional High School ("WRHS").

The essential functions of plaintiff's position include preparing for and teaching culinary and baking classes; making sure supplies and equipment are on hand; ordering supplies; testing; preparation, correction and grading of exams; grading rubrics and conducting advisory classes.  Plaintiff's duties as a culinary arts teacher require bending, twisting, squatting, lifting and other physical work.

On January 12, 2009 plaintiff reported that she had fallen in the WRHS school parking lot and had injured her back.  Plaintiff remained out of work pursuant to doctor's orders from January 13 to January 20, 2009.  Plaintiff returned to work on January 20, 2009.  At that time, defendant provided her with a substitute teacher to cover her classes when she left for physical therapy.

Between January 26 and January 30, 2009, plaintiff was out of work pursuant to her medical provider's work status summary.

On January 30, 2009, Superintendent of Schools James Agostine received a fax

from plaintiff's medical provider regarding plaintiff's work status.  The work status summary indicated the following work restrictions: "Alternate Position–To Tolerance" and "Sedentary Duties."

That same day, Agostine was informed that plaintiff had called WRHS to report that she would require a substitute to teach her class when she returned to work on Monday, February 2, 2009.  Agostine contacted plaintiff's workers' compensation case manager to verify the return to work order.  He was informed that no substitute was required for plaintiff's return to work on February 2, 2009.  Agostine contacted plaintiff to inform her that a substitute was not necessary for her to return to work on Monday, February 2, 2009, according to her physician's work status summary and her case manager.  Plaintiff's workers' compensation case manager also informed plaintiff that a substitute was not necessary.

On February 2, 2009, plaintiff arrived at WRHS but did not report to her classroom or perform her teaching duties.  She stayed in the Teachers' Center until 10:47 a.m., at which time she signed out to go to physical therapy.  A substitute was hired to teach her classes.

On February 3, 2009, plaintiff faxed lesson plans to a WRHS secretary for a substitute to use in teaching her class.  That day, she arrived at WRHS but remained in the Teachers' Center.  A substitute was hired to teach her classes.

Agostine suspended plaintiff for three days without pay.  In a memorandum to plaintiff, Agostine wrote: "I am suspending you from work without pay for three days, February 9, 10 and 11, 2009, because of your intentional misrepresentation of the return to work orders you received, because you misled the staff to believe you would

not be at work, thereby, requiring the district to obtain substitute teachers to teach your classes, because you failed to perform assigned teaching duties on February 2nd and 3rd without justification, and because you repeatedly and insubordinately defied my express directives to you."

Plaintiff grieved her suspension.  The grievance was denied by the Board of Education.  Upon appeal to arbitration, the grievance was settled and withdrawn after restoration of one day's pay.

Between February 2 through February 6, 2009, a substitute teacher was hired to cover for plaintiff's classes while she attended physical therapy.

Plaintiff did not attend work from February 9, 2009 through April 27, 2009.

Upon her return to work on April 28, 2009, plaintiff was provided with a classroom assistant until the end of the school year and for all of the 2009-2010 school year.  During this period, both plaintiff and the assistants were reminded that the assistants' functions were to help with physical activities as opposed to plaintiff's sedentary duties such as supervising study hall, correcting papers, placing orders for class supplies, class instruction and answering the classroom phone.

In January 2010, plaintiff's medical provider pronounced that she had reached maximum medical improvement.  He assigned an 11% permanent partial disability of her lumbar spine and indicated that she could continue working although she had a fifteen pound lifting restriction and she needed to alternate sitting and standing every thirty minutes.

Toward the end of the 2009-2010 school year, a functional capacity evaluation of plaintiff's classroom duties and physical limitations was conducted.  Based on that

evaluation, plaintiff's classroom assistant was discontinued at the start of the 2010-2011 school year.  Plaintiff was provided with an elevated chair with a footrest and instructed to modify her curriculum to accommodate her safe weight lifting limitation.

Defendant complied with all of plaintiff's work restrictions as they were reported to defendant by plaintiff's medical providers.

## II.  DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

5

A.    <u>Disability Discrimination</u>

Plaintiff alleges that defendant discriminated against her based on a disability in violation of the ADA, the Rehabilitation Act and CFEPA.  Defendant asserts that plaintiff cannot prove disability discrimination because she does not meet the statutory definition of disabled and she received reasonable accommodation according to the notice from her medical provider.  Further, defendant alleges that she cannot prove that defendant discriminated, retaliated against her and subjected her to a hostile environment.

1.    <u>ADA</u>

Pursuant to the ADA, a plaintiff must establish first establish that (1) the employer is subject to the ADA; and that (2) she is an individual who has a disability within the meaning of the statute.   <u>Sista v. CDC Ixis North America, Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual ...." 42 U.S.C. § 12102(1).  The statute enumerates "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  The impairment must be permanent or long-term to be substantially limiting.  <u>Farina v. Branford Bd. of Educ.</u>, 458 Fed.Appx. 13 (2d Cir. 2011).

2.    <u>Rehabilitation Act</u>

Section 504 of the Rehabilitation Act provides that "no otherwise qualified

6

individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  The Rehabilitation Act provides that complaints of employment discrimination brought under the Act are generally assessed according to the same standards as those under Title I of the ADA, 42 U.S.C. § 12111 et seq. See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003) (ADA and Rehabilitation Act claims are treated identically unless some subtle distinction applies to the case).  In fact, the Rehabilitation Act incorporates the definition of disability set forth in the ADA.  29 U.S.C. § 705(20)(B).

   3. <u>Plaintiff's Disability</u>

  The Second Circuit has declined to find temporary injuries "<u>per se</u> unprotected under the ADA" but the disability calculus considers the duration of the impairment. <u>Troeger v. Ellenville Cent. School Dist.</u>, 2012 WL 1605532, *5 (N.D.N.Y. 2012); <u>see Adams v. Citizens Advice Bureau</u>, 187 F.3d 315, 317 (2d Cir. 1999) (temporary injuries requiring a few months off of work are too short in duration to be substantially limiting). The record evidence demonstrates that plaintiff was impaired relative to lifting and bending from the date of her injury in January 2009 to January 2010 when her medical provider indicated that she had a 11% permanent partial impairment, should not lift more than 15 pounds, and should alternate between sitting and standing every thirty (30) minutes.  Plaintiff has represented that she remains unable to engage in "biking, gardening, household chores/cleaning, running, skiing and snow removal," and that, while teaching, she conducts herself more slowly and carefully and asks for assistance to avoid aggravating her injury.

Generally, courts have not found ADA-covered disabilities based on the inability to lift heavy objects.  McDonald v. City of New York, 786 F. Supp. 2d 588, 608-609 (E.D.N.Y. 2011 )(citing cases); Hall v. Cablevision of Connecticut, L.P., 2011 WL 4829775, *4 (D. Conn. 2011) (citing cases).  However, some courts have found that the inability to sit for an hour or less may constitute a substantial limitation.  Troeger v. Ellenville Cent. School Dist., 2012 WL 3643839, *3 (N.D.N.Y. 2012).

In this instance, plaintiff has not demonstrated how she is substantially limited by the weight restriction or the need to alternate positions except that she must work more slowly so as to avoid aggravating the injury.  However, for purposes of ruling on this motion, the Court assumes that plaintiff has raised an inference of fact that she is disabled in the major life activities of sitting for periods of longer than thirty minutes and lifting heavy objects.

### 4.    Disparate Treatment

To the extent that plaintiff has alleged a claim of disparate treatment based on adverse employment action, the Court finds that such claim will fail.

For purposes of ruling on this claim, the Court assumes that plaintiff can establish a prima facie case of disparate treatment under the ADA, which requires that plaintiff show that: (1) her employer is subject to the ADA, (2) she is disabled within the meaning of the ADA, (3) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation, and (4) she suffered adverse employment action because of her disability.  Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004).

ADA claims are subject to the familiar burden-shifting analysis of McDonnell-Douglas

8

Corp. v. Green, 411 U.S. 792 (1973).

If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action.  Plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).  A plaintiff bears a minimal burden on the prima facie case and need only demonstrate that she possesses the basic skill necessary for the performance of the job.  Sista, 445 F.3d at 171.

Plaintiff's opposition memorandum sets forth arguments that can be construed to assert a disparate treatment claim based on her suspension, harassment of her assistants and reduction of her position to half-time in June 2011.   However, plaintiff's complaint did not contain any allegation concerning the reduction of her position to half-time, and plaintiff could have earlier amended her complaint to reflect this claim.  Thus, the Court will not consider plaintiff's claim of discrimination based on the reduction of her position to half-time.  Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 386 n.1 (2d Cir. 2000); Guru Kripa Foods, Inc. v. Inter, Inc., 2012 WL 3306520 (E.D.N.Y. 2012).

Plaintiff has not adduced evidence that raises an inference that defendant's legitimate reasons given for its conduct are pretextual for disability discrimination. No evidence suggests that defendant suspended her because of her disability rather than her failure to perform her classroom duties based on recommendations that the medical providers had indicated.   Further, defendant has set forth that it was required to reinforce the parameters of plaintiff's classroom assistants rather than allow them to

9

take responsibility for plaintiff's duties that were not limited by her impairment.   The

evidence does not support plaintiff's assertion that her classroom assistants were

harassed due to her disability or her need for accommodation.  Summary judgment will

enter on these claims.

       5.    <u>Retaliation</u>

In order to establish a prima facie case of retaliation, plaintiff must show that "(1)

the employee was engaged in an activity protected by the federal disability statute, (2)

the employer was aware of that activity, (3) an employment action adverse to the

plaintiff occurred, and (4) there existed a causal connection between the protected

activity and the adverse employment action."  <u>Sarno v. Douglas EllimanGibbons &</u>

<u>Ives., Inc.</u>, 183 F.3d 155, 159 (2d Cir. 1999).

Plaintiff has not raised an inference of fact that a causal connection existed

between the suspension or alleged harassment and her request for accommodation.

Further, plaintiff has not proved that defendant's conduct with respect to such alleged

adverse action was pretextual for retaliation.

       6.    <u>Reasonable Accommodation</u>

Defendant argues that plaintiff cannot prevail on her claim that it failed to

accommodate her disability in violation of the ADA and the Rehabilitation Act.

To prevail on such a claim, plaintiff would need to prove (1) that with or without

reasonable accommodation, she could perform the essential functions of the job, and

(2) that the employer had notice of the plaintiff's disability and failed to provide such

accommodation.  <u>Lyons v. Legal Aid Soc.</u>, 68 F.3d 1512, 1515 (2d Cir. 1995).  Federal

regulations provide for an interactive process by which employers and employees work

together to assess whether an employee's covered disability can be reasonably accommodated.  20 C.F.R. § 1630.2(o).

In her response to defendant's Local Rule 56(a)(1) Statement of Undisputed Facts, plaintiff agreed that defendant complied with all of plaintiff's work restrictions as they were reported to defendant by plaintiff's medical providers.  Defendant did not receive medical documentation that she had a disability covered by the ADA that required a classroom assistant when she first returned to work on February 2, 2009. After defendant received notice of the need for a classroom assistant, it provided her with such assistant even after she had reached her maximum recovery.  Although the classroom assistant accommodation was discontinued at the commencement of the 2010-2011 school year, plaintiff was provided with an elevated chair with a footrest and instructed to modify her curriculum to accommodate her weight lifting limitation.  Plaintiff has provided no evidence to substantiate an assertion that she should have continued to be provided with the accommodation of a classroom assistant in the school year 2010-2011.

Summary judgment will enter on this claim.

### 7.    Hostile Environment

Courts that have considered the merits of hostile environment claims in the context of disability discrimination have applied the same standard utilized in Title VII cases.  Martinsky v. City of Bridgeport, 814 F. Supp. 2d 130, 150 (D. Conn. 2011). Thus, to establish her hostile work environment claim, plaintiff must prove (1) that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment."  Kassner v.

11

2nd Ave. Delicatessen Inc., 496 F.3d 229, 240 (2d Cir. 2007). Plaintiff must also show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." Murray v. N.Y. Univ. Coll. Of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995).

The determination of hostility is viewed according to whether "a reasonable person would find the work environment to be hostile and whether plaintiff subjectively perceived it to be so." Kassner, 496 F.3d at 240.  In this instance, plaintiff received the accommodations that were recommended by her medical providers.  Agostine explained that he disciplined plaintiff because she did not appear to be performing her job duties in accordance with the recommendations of her medical providers.  No evidence gives rise to an inference that plaintiff's work environment was permeated with intimidation, ridicule and insult.

>        8.        CFEPA

The Court will decline to exercise supplemental jurisdiction over any remaining state law CFEPA claims, which will be dismissed without prejudice.  See Donniger v. Niehoff, 642 F.3d 334, 357 (2d Cir. 2011).  Because CFEPA provides for a different definition of disability than the federal statutes, it is appropriate for a state court to determine if plaintiff falls within CFEPA's protection.  See Bellamy v. General Dynamics Corp., 2012 WL 1987171, *7 (D. Conn. June 4, 2012) (declining supplemental jurisdiction over CFEPA claim and noting CFEPA's broader definition of disability).

### III.  CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [doc. #21] is GRANTED.  Summary judgment shall enter in defendant's favor on plaintiff's ADA

allegations.  The Court declines to exercise supplemental jurisdiction over plaintiff's state law CFEPA claim and therefore DISMISSES such claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

The clerk is instructed to enter judgment in favor of defendant and to close this case.

Dated this 4th day of October 2012 in Bridgeport, Connecticut.


_____/s/_____
Warren W. Eginton
Senior U.S. District Judge